IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS FREDERKING, Individually and on behalf of all similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY and TRIPLE CROWN SERVICES COMPANY,<br><br>       Defendants. | Case No. 14-cv-1041-SMY-SCW |

## MEMORANDUM AND ORDER

This matter is before the Court on Zurich American Insurance Company's (Zurich) Motion to dismiss Counts II-V and VII of Plaintiff's Second Amended Complaint (Doc. 52). Plaintiff has filed a Response (Doc. 60). For the following reasons, Zurich's motion is **GRANTED in part** and **DENIED in part**.

### The Complaint

According to his Amended Complaint, Plaintiff is an owner-operator truck driver who, as a condition of employment, was required to sign a Contractor Operating Agreement ("Agreement") with Defendant Triple Crown (Doc. 48, ¶¶ 9-10, 17-18, Ex. 2). The Agreement provides that the relationship between Triple Crown and its drivers/employees is "a relationship of independent contractor and contractee and not an employer-employee, partnership or joint venture relationship" (Doc. 48, Ex. 2, p. 15). Pursuant to the Agreement, Plaintiff is required to:

> [A]ssume responsibility for and purchase, maintain and keep in force workers' compensation and employers' liability insurance, at [Plaintiff's] expense, for [Plaintiff's] own benefit and for the benefit of the drivers or other employees and agents, and all other persons required to be covered under the workers' compensation law of any state that is likely to have jurisdiction over Contractor's business operations. The workers' compensation insurance policy shall apply as principal coverage in Indiana as well as

states in which the work is principally localized, shall provide total other states coverage that excludes only North Dakota, Ohio, Washington, West Virginia and Wyoming, and shall be in such amounts not less than the statutory limits required by applicable state law.  Such coverage shall also meet carrier's minimum criteria and be no less comprehensive than the coverage carrier will facilitate on contractor's behalf if contractor so chooses, as provide in this Agreement. (Doc. 48, Ex. 2, p. 10, ¶ 16(b)(3)).

Also, "[Plaintiff] may, as an alternative to obtaining workers' compensation coverage, obtain occupational accident insurance coverage that meets [Defendant Triple Crown]'s minimum requirements set for here.  The coverage must provide benefits no less comprehensive than the coverage [Triple Crown] will facilitate on [Plaintiff]'s behalf if Plaintiff so chooses under this Agreement."  (Doc. 48, Ex. 2, p. 10, ¶ 16(b)(3).

According to Plaintiff, the "alternative" insurance policy that Defendant Triple Crown agreed to facilitate on the drivers' behalf in paragraph 16(b)(3) of the Agreement is specifically identified as a Zurich American Insurance Company Occupational Accident Insurance policy (Doc. 48, Ex. 1).  Plaintiff alleges that as a requirement of employment with Triple Crown, drivers were required to sign an Appendix A to the Agreement, which authorized Triple Crown to deduct premiums for the Zurich Operational Accident Insurance Policy from the drivers' compensation. In other words, Plaintiff claims that as a condition of employment, he was required to purchase Zurich's insurance policy and was prohibited from electing to be covered under the Illinois Workers' Compensation Act.  Plaintiff further alleges that instead of paying workers' compensation premiums for its drivers in accordance with the Illinois Workers' Compensation Act, Triple Crown deducted the premiums for workers' compensation insurance— "deceptively calling said policy 'occupational accident insurance'"—from its drivers' paychecks and paid the insurance premiums directly to Zurich.

## Discussion

When a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud…[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

2

generally." Fed. R. Civ. P. 9(b). A plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *Pierlli Armstrong Tire Corp Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) (citing *United States ex rel. Lusby v. Rolls—Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). Although Rule 9(b) does not require the plaintiff to plead facts sufficient to prove that the alleged misrepresentations were false, it does require the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations omitted)).

*Count II –Illinois Consumer Fraud Act*

To bring a claim under the Consumer Fraud Act, Plaintiff must allege (1) a deceptive act or practice by Defendant, (2) an intent by Defendant that Plaintiff rely on the deception, and (3) that the deception occurred in a course of conduct involving trade or commerce. *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992). See *Miller v. Showcase Homes, Inc.*, 1999 WL 199605. Zurich argues that Plaintiff has failed to plead fraud with particularity to satisfy Rule 9(b) because, for example, Plaintiff does not provide any details regarding who made the alleged misrepresentations to Plaintiff regarding the Truckers Occupational Accident Insurance policy. Further, Zurich asserts that the allegations do not specify where the alleged misrepresentations were made, the time or the method by which the alleged misrepresentations were made.

Plaintiff argues that he has met the requirements of Rule 9(b), but that even if he has not, he is not required to do so because he did not allege deception but rather unfairness pursuant to the Illinois Consumer Fraud Act. However, it is clear from the Amended Complaint that

Plaintiff is alleging a deceptive practice: "[p]laintiff and class members, as a proximate result of the defendant Zurich's misrepresentation, were *tricked* and *deceived* into paying Zurich their own workers' compensation premiums…" (Doc. 48, p. 15, par. 46) (emphasis added). Thus, Plaintiff must meet the heightened standard for pleading fraud under Rule 9(b).

Upon review of the Amended Complaint including the Exhibits attached thereto, the Court finds that Plaintiff has properly pled fraud. Exhibit 3 to the Amended Complaint contains a letter from Jennifer Pough, a Zurich Claim Professional, which indicates that its Occupational Accident coverage is not a Worker's Compensation Plan. As such the letter sets forth the who, what, where, when and how necessary to satisfy the pleading requirements of Rule 9(b). Accordingly, Zurich's Motion to Dismiss Count II is denied.

*Count III – Civil Conspiracy*

Zurich also argues that Plaintiff has not sufficiently pled a civil conspiracy cause of action because that claim is contingent upon the purported fraud. "'A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act…the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, an overt act that results in damages.'" *Cooney v.* Casady, 735 F.3d 514, 519 (7th Cir. 2013) (quoting *Hampton v. Hanrahan*, 600 F.2d 600,621 (7th Cir. 1979). Because the purpose of the alleged conspiracy was to commit fraud, Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard for conspiracy. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007). Courts "require a plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy" to survive dismissal. *Id.* at 442-43.

The Court has found that Plaintiff has sufficiently pled fraud, thus the requisite underlying cause of action exists. However, the Amended Complaint provides very little detail

about the particulars of the alleged conspiracy. Plaintiff has alleged no dates for the conspiracy or which individuals at Triple Crown and Zurich arranged the conspiracy. Plaintiff has alleged that a conspiracy existed to commit deceptive and coercive acts, but without more facts as to the "who" and "when," Plaintiff's claim of civil conspiracy must fail and Zurich's Motion to Dismiss is granted as to Count III.

*Count IV – RICO Violation*

Next, Zurich asserts that Plaintiff's Amended Complaint fails to allege racketeering because Plaintiff failed to allege that the mail communications were fraudulent, that he relied on the purported statements or that Defendants acted with the specific intent to deceive or defraud. Additionally, Zurich contends that Plaintiff failed to allege a "pattern of racketeering activity" and that Plaintiff's RICO claims are time-barred. Zurich also argues that Plaintiff failed to satisfy the requirements of Rule 9(b) by failing to allege who, when, where, how and why regarding the alleged RICO violations.

Zurich argues that Plaintiff should have discovered his alleged RICO injuries prior to September 26, 2010 - four years before this lawsuit was filed. Zurich notes that Plaintiff affirmatively alleges that the first act of racketeering activity occurred when Triple Crown mailed Plaintiff a "Dray Statement" on December 29, 2009. Therefore, according to Zurich, Plaintiff should have known of his alleged injury on December 29, 2009, and that the statute of limitations expired on December 29, 2013 with respect to this claim.

RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The four-year period begins to run when the plaintiff discovers or should have discovered his injury. *Id*. However, a plaintiff is not required to anticipate and overcome affirmative defenses in a complaint. *Sidney Hillman Health Ctr. of Rochester v. Abbott*

5

*Laboratories*, 782 F.3d 922, 928 (7th Cir. 2015). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timelines are left for summary judgment (or ultimately at trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.*

Here, it is unclear when Plaintiff discovered his alleged injury. While Zurich argues that Plaintiff discovered his injury when he received the Dray Statement, the Amended Complaint does not state whether Plaintiff knew the withdrawals were wrongful at that time. When Plaintiff knew or should have known that he was potentially wronged remains a question. Accordingly, at this juncture, the Court cannot conclude that Plaintiff's RICO claim is time barred.

According to 18 U.S.C. §1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities with affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt" 18 U.S.C. §1962(c). A RICO claim that rests on the predicate act of mail fraud must meet the particularity requirement of Rule 9(b). *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

A RICO claim satisfies Rule 9(b) if it "within reason, describe[s] the time, place and content of the mail…communications and…the parties to those communications." *Id.* The mailings need not be fraudulent in and of themselves, but they must in some manner further a scheme that entails some type of fraudulent misrepresentations or omissions. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1326-27 (7th Cir. 1994). "'Loose references to mailings…' in furtherance of a purported scheme to defraud will not do." *Jepson, Inc. v. Makita Corp.*, 34 F.3d

at 1328 (quoting *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F.Supp. 1499, 1516 (N.D. Ill. 1990).

Plaintiff has alleged that a representative from Zurich sent two letters which state that the Occupational Accident Coverage was not a workers' compensation plan. Doc. 48, Exs. 3 & 4. The letters contain the date and a signature by a claims representative. Doc. 48, Exs. 3 & 4. The letters also indicate that they were sent to Plaintiff's attorneys and note that Plaintiff is the subject of the letters. Thus, the letters meet the heightened requirement of Rule 9(b) for mail fraud under RICO.

Additionally, Plaintiff has alleged that Zurich "mailed multiple pleadings in plaintiff Frederking's Illinois Workers' Compensation claim…" (Doc. 48, p. 26). However, the complaint allegations fail to state who sent the pleadings, where they sent the pleadings or to describe the contents of the mailings other than as "multiple pleadings." Nevertheless, Plaintiff has sufficiently alleged two instances of mail fraud for purposes of RICO.

A RICO plaintiff must also identify an "enterprise." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). This term is to be interpreted broadly. *Boyle v. United States*, 556 U.S. 938, 944 (2009). "Such an enterprise…is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 944-45.

Here, Plaintiff alleges that Zurich and Triple Crown worked together to defraud Plaintiff - that Triple Crown withheld premiums from Plaintiff's paycheck and sent the premiums to Zurich.

7

Plaintiff further alleges that while both Defendants claim that he was not entitled to Illinois Worker's Compensation Insurance because there was no employee/employer relationship, Zurich and Triple Crown nevertheless used premiums from the Occupational Accident Policy to pay workers' compensation claims. These allegations satisfy the pleading requirement for establishing an enterprise.

Plaintiff however, has not sufficiently pled a "pattern of racketeering." A pattern of racketeering requires at least two predicate acts of racketeering within a ten year period. 18 U.S.C §1961(5). Establishing a pattern requires a showing of the "continuity plus relationship" test: that the racketeering predicates are related to one another and pose a threat of continued activity. Pursuant to Rule 9(b), Plaintiff must detail the circumstances surrounding the fraud, including when it began. *EQ Financial, Inc. v. Personal Financial Co.*, 421 F.Supp.2d 1138, 1145 (N.D. Ill. March 23, 2006).

Plaintiff alleges that the pattern of racketeering has been ongoing for ten years using the United States mail system, but has failed to allege with particularity when the activity actually commenced and who the representatives were for either defendant. A vague assertion that the activity has been ongoing for 10 years is not sufficient. Plaintiff is required to allege with specificity the time and place connected with the pattern of activity. Because this element of the RICO claim fails, Plaintiff's entire RICO claim fails.

*Count V – Preliminary Injunction*

In urging the dismissal of Count V, Zurich asserts that a complaint is not the proper vehicle to bring a preliminary injunction action. The Court agrees. A request for a preliminary injunction should be filed in a separate motion in accordance with Federal Rule of Civil Procedure 65 and Rule 7(b). Accordingly, Count V is **STRICKEN**.

*Count VII – Unjust Enrichment*

Finally, Zurich argues that Count VII must be dismissed because Plaintiff has failed to sufficiently allege any underlying improper conduct. To state a cause of action for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to plaintiff's detriment and that the defendant's retention of the benefit violates fundamental principles of justice, equity and good conscience. *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). "[I]f the unjust enrichment claim rest on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517.

Here, Plaintiff's unjust enrichment clalim rests on his claim of fraud ("Zurich has been unjustly enriched by its fraud" (Doc. 48, p. 35, ¶124)). Plaintiff has sufficiently pled fraud and has also sufficiently pled unjust enrichment. Plaintiff alleges that Zurich collected premiums under false pretenses and that the policy Zurich supplied allegedly provided significantly fewer benefits to Plaintiff and did so fraudulently. Plaintiff also alleges that Zurich's retention of the financial gains was fraudulent.

For the foregoing reasons, Zurich's Motion to Dismiss Plaintiff's Second Amended Complaint is **DENIED** as to Counts II and VII and is **GRANTED without prejudice** as Counts III and IV as they relate to Defendant Zurich. Count V is **STRICKEN**. Plaintiff may file a Third Amended Complaint within 30 days of the entry of this Order.

**IT IS SO ORDERED.**

Date: July 25, 2016         s/ **Staci M. Yandle**
                            STACI M. YANDLE
                            DISTRICT JUDGE